1

L7KKCELS

1   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                          19 CR 127 (PAE)

5   LUCIO CELLI,

6              Defendant.

7   ------------------------------x

8                                    New York, N.Y.
                                     July 20, 2021
9                                    10:35 a.m.

10
    Before:
11
                   HON. PAUL A. ENGELMAYER,
12
                                          District Judge
13
                        APPEARANCES
14
    JACQUELYN M. KASULIS,
15       Acting United States Attorney for the
         Eastern District of New York
16  ANNA KARMIGIOS
    JENNIFER SASSO
17       Assistant United States Attorneys

18  BENJAMIN SILVERMAN
    KATHARINE NEPHEW
19       Attorneys for Defendant

20
    ALSO PRESENT:  RAMEL MOORE, Pretrial (EDNY)
21

22

23

24

25

L7KKCELS

1        (Case called)

2        MS. KARMIGIOS:  Anna Karmigios and Jennifer Sasso, for

3  the government.  Good morning, your Honor.

4        THE COURT:  Good morning, Ms. Karmigios; and good

5  morning, Ms. Sasso.

6        MR. SILVERMAN:  Good morning, your Honor.  Benjamin

7  Silverman, for Lucio Celli, who's standing on my left.  And

8  also with us at counsel table is Katharine Nephew.

9        I also note the presence this morning of Mr. Celli's

10  mother, Mrs. Celli, and his brother, Gino, who are in the

11  audience.

12        THE COURT:  Very good.  Let me welcome you,

13  Mr. Silverman and Ms. Nephew.

14        Welcome to you as well, Mr. Celli.

15        And welcome, as well, to the members of the Celli

16  family who are here, and I appreciate very much you're being

17  here.  You may all be seated.

18        Thank you, as well, to our court reporter, Mr. Walker.

19        Counsel, we are here today to impose sentence in the

20  case of United States v. Lucio Celli.  Before proceeding any

21  further, a couple of housekeeping matters.

22        First of all, as per our usual practice, I want to

23  confirm, beginning with the defense, that there is consent to

24  hold this proceeding in the Southern District of New York,

25  notwithstanding the fact that I am sitting by designation as a

L7KKCELS

1  judge in the Eastern District for the purpose of this

2  proceeding?

3           MR. SILVERMAN:  Yes, your Honor.

4           THE COURT:  And government?

5           MS. KARMIGIOS:  Yes, your Honor.

6           THE COURT:  Very good.  Thank you.

7           Second of all, because there has been a lot of writing

8  back and forth about the conditions of supervised release, my

9  chambers took it upon ourselves to boil down the conditions of

10 supervised release that I expect to issue today in a single

11 document, which I'm going to have Mr. Smallman hand out.  I'm

12 doing that for a couple of reasons.  One is I'd like you all to

13 look at it to make sure that we've got everything right, given

14 all the ferment back and forth.  Second of all, at the end of

15 this proceeding, when I would ordinarily read aloud the

16 conditions of supervised release, rather than putting everybody

17 through the baton death march of reading this long thing out

18 loud, it seems to be better for me to summarize it and

19 incorporate it by reference.  So I'm handing that out, I'm

20 marking what I've handed out as Court Exhibit A, and a little

21 later on, I'll give you an opportunity to study it and to get

22 me any corrections.  Okay?

23           So with that, some background:  On May 7, 2021,

24 Mr. Celli pled guilty pursuant to a plea agreement to one count

25 of transmitting threats to injure other persons, in violation

4

L7KKCELS

1  of Title 18, United States Code, Section 875(c).  In

2  preparation for today's proceeding, I have reviewed again the

3  plea agreement and the transcript of the plea proceedings.

4  I've also reviewed the presentence report, which is dated June

5  the 15th of this year, including its recommendation and

6  addendum.

7       I've also received the following additional

8  submissions:  First, defense counsel's submission, dated July

9  the 9th, which contains a variety of attachments that I found

10 helpful.  These include letters in support of Mr. Celli, a

11 psychiatric report from Dr. Eric Goldsmith, and a status report

12 from the Samaritan-Daytop Village.

13      I've also received a submission prepared pro se by

14 Mr. Celli, which I authorized defense counsel to transmit to

15 the Court on Mr. Celli's behalf, and which was, in fact,

16 transmitted to the Court under a cover letter dated July 12th

17 of this year.  I agree with defense counsel that there is no

18 need for Mr. Celli's pro se submission to be publicly filed on

19 the docket of the case.  Among other things, it's full of

20 sensitive and personal material that cannot easily be redacted.

21 I have, however, asked, through my chambers, that defense

22 counsel file it under seal, to assure that there is a full

23 record of what Mr. Celli submitted, and to furnish a copy of

24 this to defense counsel, and I think Mr. Silverman has

25 confirmed to my chambers that he has done so.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

L7KKCELS

1           But, for the record, Mr. Silverman, have you done so?

2           MR. SILVERMAN:  Yes, your Honor.

3           THE COURT:  Thank you.

4           I've also reviewed the government's sentencing

5   submission, dated July the 13th.  I have reviewed a memorandum,

6   dated July the 15th, from the Eastern District of New York

7   pretrial services' agency reporting a violation by Mr. Celli of

8   his conditions of release that occurred on or about July 5th of

9   this year and recapping Mr. Celli's compliance history.  And,

10  finally, most recently, I have reviewed a memorandum, dated

11  today, from pretrial services recounting an apparent other

12  violation by Mr. Celli of his conditions of supervised release

13  involving a written communication to the U.S. Attorney's

14  Office.

15          Pausing there, have the parties received each of these

16  submissions, and has anything else been submitted in connection

17  with sentencing?

18          MS. KARMIGIOS:  Yes, your Honor, I've received those

19  materials, and I don't believe there's anything that you're

20  missing.

21          THE COURT:  Defense?

22          MR. SILVERMAN:  Same, your Honor.

23          THE COURT:  Okay.

24          Mr. Silverman, have you read the presentence report?

25          MR. SILVERMAN:  Yes, your Honor.

6

L7KKCELS

1      THE COURT:  Have you discussed it with Mr. Celli?

2      MR. SILVERMAN:  Yes, your Honor.

3      THE COURT:  Mr. Celli, have you reviewed the

4  presentence report?

5      THE DEFENDANT:  Yes, your Honor.

6      THE COURT:  Can we just move the microphone in front

7  of Mr. Celli, please?

8      THE DEFENDANT:  Yes, I have, your Honor.

9      THE COURT:  Very good.

10      Have you discussed it with Mr. Silverman?

11      THE DEFENDANT:  Yes, your Honor.

12      THE COURT:  Have you had the opportunity to go over

13  with Mr. Silverman any errors in the report or anything else

14  that should be taken up with the Court?

15      THE DEFENDANT:  He wrote in his -- yes.

16      THE COURT:  Okay.  Very good.

17      Ms. Karmigios, have you reviewed the presentence

18  report?

19      MS. KARMIGIOS:  I have, your Honor.

20      THE COURT:  Putting aside the calculation of the

21  sentencing guidelines, and focusing first just on factual

22  accuracy, are there objections to the report regarding its

23  factual accuracy?

24      Government?

25      MS. KARMIGIOS:  No, your Honor.

L7KKCELS

1          THE COURT:  Defense?

2          MR. SILVERMAN:  No, not as amended by the addendum.

3          THE COURT:  That's right, quite right.

4          Hearing no objections, I will adopt the factual

5    recitations set forth in the amended presentence report.  The

6    report will be made a part of the record in this matter.  It

7    will be placed under seal.  In the event an appeal is taken,

8    counsel on appeal may have access to the sealed report without

9    further application to this Court.

10         And, counsel, is there any reason why the parties'

11   sentencing submissions, subject to appropriate redactions,

12   including the medical and mental health attachments that are

13   attached to the defense submission, is there any reason why,

14   subject to those redactions, the parties' sentencing

15   submissions should not be publicly filed?

16         MS. KARMIGIOS:  Not from the government, your Honor,

17   and I have publicly filed it.

18         MR. SILVERMAN:  No, your Honor, and I have publicly

19   filed it with redactions to Exhibits A through C and the

20   discussion in the letter of Mr. Celli's mental health.

21         THE COURT:  Very good.  Thank you.

22         Turning next to the sentencing guidelines:  The Court,

23   of course, is no longer required to follow the sentencing

24   guidelines, but I am required to consider the applicable

25   guidelines in imposing sentence.  To do so, it's necessary that

8

L7KKCELS

1    I accurately calculate the guideline sentencing range.  Now, in

2    this case, there is a plea agreement in which the parties

3    stipulated to a particular calculation of the sentencing

4    guidelines.  I recognize that the parties agreed to jointly

5    recommend a sentence of time served, but, as a formal matter, I

6    need first to calculate what the guidelines recommend.

7            Counsel, am I correct that the calculation in the

8    presentence report is in accord with your agreement?

9            MS. KARMIGIOS:  Yes, your Honor.

10           MR. SILVERMAN:  Yes, your Honor.

11           THE COURT:  Then, based on the parties' agreement and

12   the absence of objection and my independent evaluation of how

13   the guidelines apply to this case, I accept the guideline

14   calculation in the presentence report, I find that the offense

15   level is 17, the criminal history category is I, and the

16   guideline range is between 24 and 30 months' imprisonment.

17           The next subject I need to take up involves

18   departures, which is to say within the narrow framework of the

19   sentencing guidelines.  For the record, I'm not going to

20   utilize the departure mechanism here.  There has been a

21   consented-to request by the defense for a downward variance

22   here, and the more flexible standards provided by the variance

23   methodology are more sensible to use than the archaic departure

24   methodology, which, after the 2005 decision in *Booker*, in my

25   opinion, has ceased to have much of a useful purpose.

L7KKCELS

1          That said, for the record, purely as a formal matter,

2     my judgment is that there appear to have been legally available

3     bases to depart in this case in either direction, upward under

4     Section 4A1.3, for the reasons noted in the presentence report,

5     and downward, for reasons including relating to Mr. Celli's

6     mental health profile.  But, as I said, even if I had authority

7     to depart, as an exercise of discretion, I wouldn't utilize my

8     power to depart here, as I prefer to evaluate potential

9     sentences outside the guideline range under the post-*Booker*

10    variance methodology.

11         With that, I'm about to turn to the government to ask

12    if you wish to be heard with respect to sentencing, but I

13    realize that I neglected, in doing so, at the outset to take

14    the attendance of the pretrial services officer.  Who is here

15    from pretrial?

16         MR. MOORE:  Good morning, your Honor.  Officer Ramel

17    Moore.

18         THE COURT:  Good morning, Mr. Moore.

19         MR. MOORE:  Thank you.

20         THE COURT:  Let me hear from the government.

21         At some point in the course of my discussion with you,

22    I'd welcome the government's perspective on the violations that

23    have been alleged by pretrial, but I won't choreograph the

24    order in which you go.  Ms. Karmigios?

25         MS. KARMIGIOS:  Thank you, your Honor.  With respect

10

L7KKCELS

1  to the sentence that the Court is imposing today, I would rest

2  on my submission.  As stated in that submission and pursuant to

3  the parties' plea agreement, the government is not opposing the

4  defendant's request for a time-served sentence with two years

5  of supervised release.

6         With respect to the violations that have occurred

7  recently, that doesn't change the government's position on

8  sentencing, but I do believe that your Honor can consider those

9  things as relevant conduct and in fashioning a sentence.

10        THE COURT:  Is it your view that, to the extent those

11  violations bear on the sentence, they really should bear on the

12  conditions of supervised release?

13        MS. KARMIGIOS:  I think that's right, your Honor.

14        THE COURT:  Okay.  I agree with that.

15        To update me, the first of the violations involves an

16  allegation of, essentially, DWI, which resulted in a car

17  accident.  What's your understanding as to procedurally how

18  that's going to be pursued?  I take it state authorities have

19  something underway, but I would like some clarification as to

20  what that is.

21        MS. KARMIGIOS:  Yes, your Honor.  I haven't been able

22  to find out anything firsthand from that agency.  I've spoken

23  with pretrial and with defense counsel.  My understanding is

24  that the defendant was issued a desk appearance ticket, and

25  that although he was arrested, and I believe there were felony

L7KKCELS

1  charges at that time, they may have been reduced to misdemeanor

2  charges.

3           THE COURT:  Okay.

4           And there's no indication what course that will take?

5           MS. KARMIGIOS:  No, your Honor.

6           THE COURT:  Is it the government's view, then, that as

7  it relates to punishment, that ought to be left to the state

8  authorities, given how new the charge is and the uncertain

9  outcome as to, among other things, liability?

10          MS. KARMIGIOS:  Yes, your Honor, I think that's right.

11          THE COURT:  Okay.

12          Tell me about the second violation that's recently

13  been brought that's the subject of today's memo.

14          MS. KARMIGIOS:  Thank you, your Honor.

15          I checked my mailbox late yesterday evening, and an

16  envelope addressed to the current United States Attorney was in

17  my mailbox, and it made its way to me presumably because I'm

18  assigned to this case.  Inside was an approximately 20-page

19  submission, the contents of which are largely similar to, and

20  maybe even redundant of, the defendant's ex parte submission in

21  connection with the sentencing proceeding today.  There's also

22  a USB drive in there that I have not put into my computer for

23  security reasons as well as concerns over what might be

24  contained.  I know there have been some discussions in the

25  filings of recordings of conversations with defense counsel,

L7KKCELS

1    and so I thought it best not to see what was on the USB drive.

2            THE COURT:  Have you been able to share with

3    Mr. Silverman — and I realize this is very late arising — the

4    content of the written submission?

5            MS. KARMIGIOS:  Yes, your Honor.  I provided a scanned

6    copy to all of the parties and pretrial services as well.

7            THE COURT:  Okay.

8            Is it your understanding that that submission

9    significantly tracks, essentially, the authorized defense

10   submission by Mr. Celli in this case?

11           MS. KARMIGIOS:  From what I can tell, your Honor, the

12   contents are similar.  It's a shorter submission, it's not the

13   exact same thing, but the contents are similar.

14           THE COURT:  Were you able to note anything that's in

15   the submission made to you that isn't in Mr. Celli's sentencing

16   submission?

17           MS. KARMIGIOS:  Not in particular, your Honor.  I note

18   it more references to our current Acting United States Attorney

19   but, other than that, it seemed like the content was very

20   similar.

21           THE COURT:  Is there anything in there that would

22   qualify as a threat?

23           MS. KARMIGIOS:  No, your Honor.

24           THE COURT:  Okay.

25           Anything in particular in there that you'd want to

L7KKCELS

1   bring to my attention?

2           MS. KARMIGIOS:  No, your Honor.

3           THE COURT:  I take it the significance, then, is, is

4   that in breach of a --

5           MS. KARMIGIOS:  I'm sorry, your Honor.

6           THE COURT:  Go ahead.

7           MS. KARMIGIOS:  One fact that may be worth mentioning

8   is that the first page of the submission notes that the

9   defendant assumed that the filing would not make it to my

10  mailbox until after he was sentenced.  I'm not sure the exact

11  meaning behind that, but it seemed informative to whether he

12  believed he was violating his conditions of pretrial release.

13          THE COURT:  Oh, that's interesting.  Okay.

14          In other words, the thesis being that if it was sent

15  before sentencing, it arrived afterwards, it couldn't be

16  considered at sentencing and might not be a violation of

17  supervised release because it predated the imposition of

18  supervised release?

19          MS. KARMIGIOS:  Yes, your Honor.  I also have a copy,

20  I should say, that I can provide to the Court.

21          THE COURT:  I'm going to take your representation as

22  to its contents.

23          Salient here is that it violates a very clear

24  directive that I had issued, that is, a term of pretrial -- of

25  the defendant's pretrial release not to reach out to, among

14

L7KKCELS

1     others, you?

2             MS. KARMIGIOS:  Yes, your Honor.

3             THE COURT:  Okay.

4             Let me ask Officer Moore if you have anything to add?

5     If you do, you'll need to speak into the microphone.

6             MR. MOORE:  No, your Honor, pretrial doesn't have

7     anything further to add aside from the information in the

8     memorandum that's been submitted to the Court already.

9             THE COURT:  All right.

10            The government has taken, I think, the sensible view

11    here that the infractions that have been brought to my

12    attention may bear on the conditions of supervised release, but

13    should not lead me to depart from the joint recommendation as

14    to the prison sentence, i.e., time served, from counsel.  Does

15    pretrial agree with that?

16           MR. MOORE:  Yes, your Honor, pretrial does agree with

17    that.

18           THE COURT:  Thank you.  Very helpful.  All right.

19           Government I have a handful of questions about other

20    matters for you.  The first just involves the right of the

21    victims in this case to participate.  I know the victims have

22    been on notice of this prosecution, that is to say, the judges

23    who received the letters.  I just want to make sure that they

24    were given an opportunity to participate here, i.e., to convey

25    any views and have elected not to do so?

15

L7KKCELS

1      MS. KARMIGIOS:  Yes, your Honor, I've conferred with

2  the probation officer who prepared the presentence

3  investigation report, and he also, separately from myself,

4  reached out to the victims and solicited any victim impact

5  statements, and they declined to give any.

6      THE COURT:  Okay.  Very good.

7      Going through a handful of items, there's not

8  restitution in this case, correct, that's not being sought?

9      MS. KARMIGIOS:  That's correct, your Honor.

10      THE COURT:  And there's no forfeiture being sought?

11      MS. KARMIGIOS:  Also correct, your Honor.

12      THE COURT:  The parties' plea agreement did not speak

13  to a fine.  There is a fine authorized, but not required.  The

14  probation department recommends a fine.

15      Does the government have a view on that?

16      MS. KARMIGIOS:  I don't have a view on that, your

17  Honor.

18      THE COURT:  Okay.

19      I note that based on recent events, there appears to

20  be a joint view that inpatient drug treatment is in order here.

21  Am I correct to understand that?

22      MS. KARMIGIOS:  I don't object to the Court imposing

23  that.  I leave it to defense counsel and the defendant and your

24  Honor to decide whether it's warranted.

25      THE COURT:  Okay.

16

L7KKCELS

1         To confirm from your letter, Mr. Silverman made modest

2    adjustments to some of the conditions of supervised release

3    that appeared in the plea agreement.  I understood your letter

4    to assent to those as sensible modifications, but just to

5    confirm, the government assents to those?

6         MS. KARMIGIOS:  Correct, your Honor.

7         THE COURT:  In a moment, I'm going to turn to

8    Mr. Silverman, and I know you'll need to listen carefully, but

9    I will be asking you later whether the government has any issue

10    with any of the detailed conditions of supervised release that

11    are in Court Exhibit A.  So, I would welcome your giving a

12    close look at that.

13         MS. KARMIGIOS:  Thank you, Judge.

14         THE COURT:  All right.  Thank you.

15         Mr. Silverman, do you wish to be heard?

16         MR. SILVERMAN:  Thank you, your Honor.

17         I'll start with the pretrial violations.  When I spoke

18    with Mr. Celli on the afternoon of July 5, I found out that he

19    had been taken into custody, I believe he received a desk

20    arrest ticket.  He went home that night.  I immediately

21    notified pretrial services and the government.  The next

22    morning, I spoke with Mr. Celli, Ms. Nephew, and Ms. Pappas,

23    his drug treatment provider at Samaritan-Daytop, and it was

24    their conclusion, together with Mr. Celli, that he should enter

25    a 30-day drug rehabilitation program as quickly as possible.

17

L7KKCELS

1    There was some discussion about requesting an adjournment of

2    the sentencing date, and then, upon conferring with pretrial

3    services, Officer Moore, and with the government, we decided to

4    agree upon restrictions on Mr. Celli's driving over the past

5    two weeks, keeping the sentencing date, and requesting that if

6    he remains at liberty, that he be asked to report very, very

7    soon hereafter to a program.  I understand that the program is

8    now planning to pick him up, if it's able to, from his home on

9    the morning of July 23rd, which is this Friday.  I noticed that

10   your Honor's terms, which I haven't been able to read in full

11   yet, discuss partial payment, and Ms. Nephew has worked with

12   Mr. Celli to get the UFT to pay for it in full.  It was

13   referred by his present treatment provider, Alyssa Pappas, and

14   although Ms. Nephew independently located this outpatient drug

15   and mental health treatment for Mr. Celli, I also note that the

16   Southern District's pretrial services regularly uses this

17   treatment provider for cases from the White Plains courthouse

18   and that they're a reputable treatment provider.

19          If Mr. Celli is able to go to this outpatient

20   treatment, the 30-day --

21          THE COURT:  Outpatient or inpatient?

22          MR. SILVERMAN:  I'm sorry, inpatient.

23          -- the 30-day inpatient treatment, he will be able to

24   go back as seamlessly as possible to Ms. Pappas — this is a

25   place that she refers people to — and then the idea is that

L7KKCELS

1  when he comes out, he would resume his two- to three-day-a-week

2  outpatient treatment with her, including as much drug testing

3  as possible.

4          I will stop there on Mr. Celli's cocaine abuse problem

5  for a moment unless the Court has any --

6          THE COURT:  Well, make a note that what you just said

7  sounds like it will require an adjustment or two to the

8  particular supervised release term that describes the inpatient

9  that he's about to go into.  I'll ask you more systemically to

10  go through these, but, at a minimum, the date is wrong, and

11  there may be other adjustments to make.

12          MR. SILVERMAN:  Right, your Honor, the date has

13  changed since I proposed it in my sentencing letter by one day,

14  and that is because this program picks people up and drops them

15  off.  They are in Central Pennsylvania.

16          I do think that Mr. Celli's cocaine abuse problem,

17  although it certainly ties into his mental health problems, I

18  think as with many people, cocaine and crack provide some kind

19  of respite from severe mental illness, and it's a form of

20  self-treatment and provides -- as Mr. Celli described to the

21  treating psychiatrist, Dr. Goldsmith, it gives him a feeling of

22  mindlessness.  And so it ties into his mental health problems,

23  but I also think it's different from the criminal conduct

24  charged in this case for several reasons.

25          Most significantly, as the Court knows, drug addiction

L7KKCELS

1    doesn't respond in the same ways to punitive deterrence.  It is

2    a much more enduring problem that has to be treated over a

3    longer term.  The criminal conduct with which Mr. Celli was

4    charged — making threatening remarks — is something certainly

5    properly addressed by a criminal prosecution, and he has been

6    specifically deterred.  He has engaged in extensive nuisance

7    behavior, although it's gotten better, and I want to talk about

8    that arc, but he has not made threatening remarks to this

9    Court, to Judge Donnelly, to Officer Moore or Officer Dorn,

10   Officer Barrios, to AUSA Karmigios or Bensing, and I note that

11   the letter that Ms. Karmigios received yesterday was not

12   addressed to her.  It was addressed, as I understand it -- I

13   have not seen the envelope, but, as I understand it, it was

14   addressed to the Acting United States Attorney for the Eastern

15   District of New York.  That's not to say it's a good thing to

16   do.  I just want to point out that it was not directly

17   addressed to Ms. Karmigios, as your Honor has forbid.

18            THE COURT:  While we're on that, though, do you agree

19   with Ms. Karmigios' characterization of the relationship

20   between that letter and your client's pro se sentencing

21   submission?

22            MR. SILVERMAN:  Yes, your Honor.

23       And I would note that that 209-page document that I

24   provided on July 12th has a lot of redundancies within it, and

25   I think Ms. Karmigios is exactly right, that these 20 pages

20

L7KKCELS

1    that were sent to her contain, in substance, the same ideas.

2    Even if they're not verbatim, they are materially the same as

3    what is before the Court.

4           Mr. Celli, this is -- something very unusual happened

5    during the *Faretta* hearing.  Your Honor told Mr. Celli, I

6    believe correctly, that he had a triable case, and it's

7    frequently very --

8           THE COURT:  He had a?

9           MR. SILVERMAN:  -- a triable case, and that he could

10   win at trial.  And it's frequently a challenge to persuade

11   people who have no chance of winning at trial that they have no

12   chance of winning at trial, but, here, after he was told by the

13   Court that he had a case that he could win at trial, Mr. Celli

14   nonetheless decided to accept responsibility and plead guilty.

15          And I think that's a notable added amount of

16   acceptance of responsibility because frequently people who have

17   a chance at trial, which is rare in federal court, but often

18   people who have that chance choose to accept it, and Mr. Celli

19   did not.  And he didn't do it because he knows that what he did

20   was illegal and wrong, and Mr. Celli will address the Court

21   about that, too.  And he has not crossed that line again.

22   Dr. Goldsmith's report points out, and I think your Honor's

23   proposed supervised release conditions take into consideration,

24   that Mr. Celli responds to very strict limits and very clear

25   lines.  And there's no question that his arrest, that his four

L7KKCELS

1    and a half months in prison, created a very clear line about

2    threats, and that all of his conduct since then, as intemperate

3    and improper and, at times, frankly, annoying as it can be for

4    all the parties and for the Court, it has not crossed that very

5    clear line.  I note that it was four and a half months in

6    prison that spanned the MDC blackout.  I spared the Court a

7    one-page cite of cases that have varied on the basis of that

8    blackout.  I know the Court is well aware of that, but that was

9    more punishing than the ordinary period in jail, and so we're

10   talking about more than a four-and-a-half month sentence, and

11   since he got out, which was over two years ago, the illegal

12   conduct has stopped, other than his drug abuse problem, which,

13   as I said, I view as something different.  I don't think drug

14   abuse responds in quite the same way to punitive deterrence.

15           I don't know that Mr. Celli received as much drug

16   testing throughout the pandemic, and that's not anyone's fault,

17   it's just things dropped off — no one prepared for the

18   pandemic, no one had a -- whatever plans were in place weren't

19   as robust as they will be going forward, and I saw this with

20   several clients, that there wasn't a huge amount of drug

21   treatment in the early days of the pandemic -- or drug testing,

22   I meant to say.  Mr. Celli has been in drug treatment.  He

23   clearly needs more intensive drug treatment.  That's clearly an

24   ongoing problem that ties into his mental health, and certainly

25   by increasing the medications noted in the sentencing letter

22

L7KKCELS

1   and in the reports, the hope is that he will be less inclined

2   to self-medicate.  And I'm not arguing that punitive sanctions

3   play no role in this process, but I do think that the drug

4   addiction presents a different conundrum than the other

5   criminal conduct that's at issue here.

6           In terms of general deterrence, I actually learned

7   from people, colleagues of mine who had appeared before your

8   Honor, about DOJ's studies showing that the knowledge that you

9   will actually go to jail is significant and that the amount of

10  jail time is not as significant, and, in this case, Mr. Celli

11  has gone to jail, and that marker has been set that this is

12  conduct that gets people arrested and put in jail and not just

13  overnight.

14          I also think, when we look at the arc of the conduct,

15  and there have been a lot -- as Officer Moore noted this

16  morning, there have been a lot of pretrial violation memos — if

17  you take out the three that were for testing positive for

18  cocaine, the arc of them, they get somewhat less serious.

19  That's not to say that Mr. Celli is doing things that are all

20  good and fine, but early on, he was calling the government,

21  and, if no one picked up the phone, he would scream and yell

22  and leave abrasive, nasty voice messages.  That's not what's

23  going on.  In fact, if you look at the April 26th violation

24  memo when he reached Ms. Karmigios, he didn't scream and yell

25  at her, he didn't speak to her abusively.  That's not to say

L7KKCELS

1    that it was good conduct, but the arc of it is somewhat calmer.

2              And then he asked, on that April 26th call, for a fax

3    number.  I represented the following week to the Court that I

4    did not believe that he intended to fax anything threatening.

5    And, in fact, we now know what he sent, although not directly

6    to Ms. Karmigios, what landed in her inbox, was the kind of

7    thing that he wanted to send making a record of perceived

8    injustices.  It's not the right way to do it, it's not

9    something that he should be doing, but the arc of this is from

10   irate phone calls that rattled people, to not speaking

11   abusively to people, to not making threats, to making what

12   present themselves as formal legal claims only.

13             Mr. Celli clearly has serious issues to work on.  And

14   I do believe that people who wrote to the Court that he was a

15   respected public schoolteacher, he's been in the public schools

16   since the late 1990s.  He has been in the rubber room a lot in

17   recent years, but there was a time when he was a respected

18   teacher, and a good one.  And Lucio, on a good day, it's hard

19   to imagine if your only contact with him has been in this

20   courtroom.  He can be self-deprecating, he can be kind, he can

21   be funny.  It is a sad thing to watch people develop serious

22   mental illness as adults, and I think will require extensive

23   treatment for the rest of his life, which leads me to two

24   technical points that I just want to address.

25             The first is:  I think your Honor's proposed terms of

24

L7KKCELS

1    supervised release clearly take this into consideration, but

2    insofar as the probation office had any concerns, I do note

3    that there are plenty of ways to address Mr. Celli's conduct

4    short of putting him in jail for nuisance behavior, which is,

5    at this point, what we're dealing with.  For example, the

6    Second Circuit has issued a filing bar.  He is not allowed to

7    file things in the Second Circuit.  This Court has the

8    authority to issue one in civil cases.  The Second Circuit has

9    set forth a standard.  No one has sought that, but that is a

10   way to deal with nuisance filings --

11            THE COURT:  You're raising that as a response if there

12   is a violation along those lines?

13            MR. SILVERMAN:  Correct.

14            THE COURT:  You're not asking for something like that

15   today?

16            MR. SILVERMAN:  No, your Honor, but I'm just noting

17   that there are plenty of ways to deal with this kind of issue

18   short of more jail time.  The Court has clearly established

19   inherent authority to impose filing bars.

20            Now, it's tricky because Mr. Celli has also himself

21   been sued, but the Court has very detailed -- and I have a case

22   I can provide from Judge Jones of the Southern District,

23   *McPherson v. Kevin P. Castel*, 12 CV 6438, at Docket Entry

24   No. 12, and that decision, in turn, relies on a widely cited

25   Second Circuit standard for imposing filing bars, including,

25

L7KKCELS

1　among other places, in *Bridgewater*, 346 F.3d 27.  But there are

2　other authorities as well.

3　　　　THE COURT:  I just want to make sure I understand the

4　context in which you're raising this line of authority.  This

5　is not for action today, you're putting down a marker that, if

6　there is a violation of supervised release that sounds in a

7　breach of a term that limits the circumstances under which he

8　can communicate or file something, you're laying down a marker

9　that you hope the Court will respond with a filing bar as

10　opposed to something incarcerative?

11　　　　MR. SILVERMAN:  That's right, your Honor.  And that

12　there are ways to deal with nuisance behavior that are not

13　strictly within the criminal punishment framework.

14　　　　Your Honor raised the question of a fine.  Mr. Celli

15　remains employed.  I haven't finished your Honor's supervised

16　release terms.  I don't know whether it adopts one of

17　probation's proposed terms, which was about notifying the Board

18　of Education.  I can represent, I've spoken with the Board of

19　Education or with representatives.  The Board of Education

20　knows -- or the Department of Education knows about this case.

21　It has an administrative process, upon conclusion of a case, on

22　whether it determines to dismiss a teacher based on a framework

23　that's established in the collective bargaining agreement with

24　the UFT.  This will definitely go --

25　　　　THE COURT:  And that is the second to last bullet

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

26

L7KKCELS

1   point here within the proposed supervised release terms. I

2   will give you a chance to study them more closely.

3          MR. SILVERMAN: Thank you, your Honor.

4          So, there will be an administrative process. I

5   honestly don't know how it will turn out. I had a conversation

6   with the DOE lawyer, in which he told me that teachers don't

7   always get fired, and I said what if a teacher is convicted of

8   murder, and he said, no, you don't automatically get fired,

9   there's a process.

10         I don't know what will happen, but I know that if

11   Mr. Celli were not to keep his job, he would find it extremely

12   difficult to gain employment, given the termination, given the

13   cases, and given his mental health.

14         THE COURT: I take it if there is a nominal fine or a

15   fine in the low four figures, that's something that he is

16   capable of paying?

17         MR. SILVERMAN: He's capable of paying that, your

18   Honor.

19         What Mr. Celli did is inexcusable, and I appreciate

20   how incredibly frightening it is. We live in very scary times,

21   we live in times where people have to be on very high alert,

22   and it's absolutely inexcusable to make statements like this.

23   The framework was that he was a known nuisance figure to the

24   marshals, as noted in the government's March 27 letter, and all

25   of those attachments from the marshals' paperwork, he was a

27

L7KKCELS

1    known nuisance.  I think he was honest at sentencing when he
2    told the Court that he did it to get attention because no one
3    was paying attention to his various missives filed through
4    otherwise proper channels.  That's not a justification, right,
5    that's not an excuse, and it absolutely cannot happen anymore.
6    I do believe he's been sufficiently punished.  I do believe
7    that he is receiving a lot of mental health and drug addiction
8    treatment that will serve him and hopefully society well, and I
9    respectfully submit that the government is right not to seek a
10   term of further incarceration.
11           THE COURT:  Very good.
12           Mr. Silverman, let me just ask you:  The mental health
13   treatment program that is a recommended condition here, and
14   that's been a subject of everyone's submissions, did you have
15   in mind inpatient or outpatient?
16           MR. SILVERMAN:  It's a good question, your Honor.
17           And I expect, based on my first scan, that probation
18   has some authority to make recommendations.
19           THE COURT:  Right, but under circuit law, inpatient,
20   outpatient has to be a district court, not a probation
21   decision, so I'm eager to get your guidance.
22           MR. SILVERMAN:  I see.
23           So, my understanding, as I stated at the last status
24   conference, from speaking with Dr. Goldsmith and others, is
25   that Mr. Celli does not meet the standard for involuntary

28

L7KKCELS

1    inpatient treatment because he's not considered a danger to

2    himself or others.

3             THE COURT:  So, the recommendation would be whereas

4    it's inpatient for drug treatment, outpatient for mental health

5    treatment?

6             MR. SILVERMAN:  That's the recommendation.  That would

7    be the recommendation.

8             I also note, though, that in the past, one of the

9    obstacles to inpatient mental health treatment has been

10   payment.  These are unbelievably expensive programs.  And so

11   with probation assisting, more things may be possible, but my

12   understanding is that right now, the best thing, and what's

13   being recommended by Ms. Pappas, is inpatient drug treatment

14   followed by continued inpatient and -- I'm sorry, followed by

15   continued outpatient mental health and drug treatment.

16            THE COURT:  All right.

17            So, I'm going to carat in the words "outpatient"

18   before the words mental health treatment program on the bullet

19   point on the bottom of page 1.

20            MR. SILVERMAN:  Yes, your Honor.  Thank you.

21            THE COURT:  Okay.

22            Go ahead.

23            MR. SILVERMAN:  I was going to say unless your Honor

24   has any more questions.

25            THE COURT:  No.  Mostly, I'm eager, because so much

29

L7KKCELS

1    turns on the conditions of supervised release, to get your

2    close review, but what I'll do is I'll call on Mr. Celli, then

3    I'll give counsel an opportunity in a quiet courtroom to take a

4    look at the conditions to make sure that there's nothing left

5    out or warranting correction.

6            MR. SILVERMAN:  Thank you, your Honor.

7            THE COURT:  Thank you, Mr. Silverman.

8            With that, Mr. Celli, do you wish to make a statement?

9            THE DEFENDANT:  Yes, your Honor.

10        As I sit here to write this letter about my conduct

11    for sentencing, I am lost for words to tell the Court.  I know

12    your Honor hears many of these statements a day, during the

13    week, and many throughout the year for sentencing.  I truly

14    wonder what others say and how your Honor gauges their

15    sincerity because this is what I -- this is what should matter,

16    or I assume that's -- I assume this because this is what I

17    would look for during a statement presentation.

18        I understand that I'm supposed to show the Court that

19    I have changed and will not engage in the same conduct.  I have

20    not engaged in the same conduct charged since the arrest, and I

21    do not see myself engaging in the same conduct.

22        I truly do not know what to say because what I said in

23    my post statement arrest holds true today.  I did not want to

24    do this because I know how it feels, but I felt I was not

25    receiving a fair legal process over my due process rights.

30

L7KKCELS

1        I am truly sorry for anyone who was afraid of my

2    emails, but that was not my intent; my intent was to gain

3    justice taken from me by Randi Weingarten, Betsy, and the UFT.

4    This is not to excuse -- this is not an excuse, but the truth.

5    I cannot change the past, nor is there a way to ameliorate what

6    I did or said.

7        I apologize to Judge Brodie and Judge Cogan.

8        THE COURT:  Thank you, Mr. Celli, for the thoughtful

9    remarks.

10       Mr. Silverman, if you're able to get a copy of

11   Mr. Celli's remarks for the court reporter's benefit — I see

12   Mr. Walker nodding — that would be much appreciated.

13       MR. SILVERMAN:  Yes, your Honor.

14       THE COURT:  All right.

15       Why don't we do this:  Let's take a five-minute

16   recess, I'll step out.  The purpose of the recess is so that I

17   can collect my thoughts, but also so that counsel can review

18   the Court Exhibit A, and when we resume, I'll ask you what, if

19   any, changes, other than caratting in the word outpatient,

20   anyone has on those conditions.  After that, we'll proceed to

21   sentencing.

22       MR. SILVERMAN:  Thank you, your Honor.

23       THE COURT:  Thank you.

24       (Recess)

25       THE COURT:  Mr. Silverman, have you had an opportunity

L7KKCELS

1    to read Court Exhibit A?

2           MR. SILVERMAN:  Yes, your Honor.

3           THE COURT:  You want to just take me through in order

4    any adjustments you propose?

5           MR. SILVERMAN:  Yes, your Honor.  On the second page,

6    the first full paragraph, it says, "The defendant shall enter a

7    30-day inpatient substance abuse treatment program starting on

8    July 22, 2021," and I respectfully request that that be amended

9    to July 23, 2021.  As noted, the date was adjourned since the

10    submission of my sentencing letter.

11           And as your Honor pointed out, on the first page, the

12    last bullet, we respectfully request that the word "outpatient"

13    be inserted before "mental health" so that it reads, "The

14    defendant shall participate in an outpatient mental health

15    treatment as approved by the probation department."

16           THE COURT:  Any other changes?

17           MR. SILVERMAN:  No, your Honor.  I would just note —

18    and I conferred with Ms. Karmigios about this — that

19    Mr. Celli's statement, which he clearly wrote himself, in no

20    way meant to say that he is not guilty of the crime.  He was

21    intending to express that he feels terrible about what

22    happened.

23           THE COURT:  I understood Mr. Celli's statement just as

24    you did.

25           MR. SILVERMAN:  Thank you, your Honor.

32

L7KKCELS

1          THE COURT:  While I noted that you had made the point

2     that the hope is that the entirety of the inpatient will be

3     covered by others, I take it there's no problem with my

4     retaining the language in this bullet point to capture the

5     circumstance in which it is done?

6          MR. SILVERMAN:  No, your Honor.

7          THE COURT:  Very good.

8          Ms. Karmigios, do you have any edits to the conditions

9     of supervised release?

10         MS. KARMIGIOS:  One clarification, your Honor.  The

11    eighth bullet point down, starting with "the defendant shall

12    not make any phone calls or send any," just to clarify that

13    written correspondence includes literally written

14    correspondence as well as email and electronic correspondence.

15         THE COURT:  Mr. Silverman, any objection to my making

16    that clarification?

17         MR. SILVERMAN:  No, your Honor.

18         THE COURT:  All right.  Then after "written

19    correspondence," I'm going to write in parentheses, "(including

20    by email)."

21         MS. KARMIGIOS:  Thank you, your Honor.

22         I just have one more small edit --

23         THE COURT:  Yes.

24         MS. KARMIGIOS:  -- because I think it's important to

25    raise; I otherwise wouldn't.  It seems there's a typo in the

33

L7KKCELS

1  fifth bullet point, "after counsel makes approves a filing."

2        THE COURT:  "Counsel approves," and I should delete

3  the word "makes."

4        MS. KARMIGIOS:  Thank you, your Honor.

5        THE COURT:  Very good.  I'll do that.

6        Anything else, Ms. Karmigios?

7        MS. KARMIGIOS:  No, your Honor.

8        THE COURT:  Because this is a Court exhibit, I will

9  issue an order today that attaches, with the amendments we've

10  just made, this document so that it is there in the interest of

11  a full record, but I expect that in the conditions of

12  supervised release that are contained in the judgment, exactly

13  these same terms will be set out in full.

14        MR. SILVERMAN:  Thank you, your Honor.

15        THE COURT:  With that, is there any reason why

16  sentence should not now be imposed?

17        MS. KARMIGIOS:  No, your Honor.

18        MR. SILVERMAN:  No, your Honor.

19        THE COURT:  All right.

20        Mr. Celli, I'm about to set out what the sentence will

21  be and explain at some length the reasons why.

22        As I have stated, the guideline range that applies to

23  this case is between 24 and 30 months' imprisonment.  Under the

24  Supreme Court's decision in *Booker* and the cases that have

25  followed it, the guidelines range is only one factor that the

L7KKCELS

1    Court must consider in deciding the appropriate sentence.  The

2    Court must also consider the other factors set forth in the

3    sentencing statute, Title 18, United States Code, Section

4    3553(a), and these factors include:  The nature and

5    circumstances of the offense and the history and

6    characteristics of the defendant, the need for the sentence

7    imposed to reflect the seriousness of the offense, to promote

8    respect for the law, to provide just punishment for the

9    offense, to afford adequate deterrence to criminal conduct, to

10   protect the public from further crimes of the defendant, and to

11   provide the defendant with needed educational or vocational

12   training, medical care, or other correctional treatment in the

13   most effective manner.

14           The Court is also required to impose a sentence

15   sufficient, but no greater than necessary, to comply with all

16   those purposes considered together.  Here, I find that the

17   sentence that I'm about to pronounce is sufficient, but not

18   greater than necessary, to satisfy the purposes of sentencing

19   that I just reviewed.

20           Mr. Celli, I'm very familiar by now with your case.

21   When the case was first transferred to me, I carefully reviewed

22   all the prior transcripts and other records from the case.

23   Since then, I've supervised it through to the brink of trial,

24   when your guilty plea was entered.  I carefully reviewed the

25   parties' many submissions, including relating to pretrial

35

L7KKCELS

1     motions and motions in limine.  I very carefully reviewed

2     everything that's been submitted to me in connection with

3     sentencing, including the presentence report, the submissions

4     by counsel on each side, and also, of course, the pro se

5     submission that you were authorized to make.  And, of course, I

6     by now presided over a number of conferences, and at a number

7     of them, I had the opportunity to speak directly with you from

8     the bench, sometimes in the presence of government counsel and

9     sometimes ex parte when issues about your representation arose.

10    And through all of that, I've gained, I believe, a thorough

11    familiarity with his matter.

12            In preparation for today, I've given a lot of thought

13    and attention to the appropriate sentence in this case in light

14    of the Section 3553(a) factors and, really, the appropriate

15    purposes for which sentences are imposed, as reflected in our

16    sentencing statute.

17            The following are my thoughts, and to give you

18    reassurance, and so that you can listen without feeling anxious

19    about the result, I'm going to give you the bottom line right

20    away as it relates to the imprisonment component of your

21    sentence.  Government and defense counsel have jointly proposed

22    that as to imprisonment, you be sentenced to a term of time

23    served.  You said about four and a half months in pretrial

24    custody before being released, and so that is what time served

25    would mean.  I am persuaded by counsel's joint recommendation.

L7KKCELS

1    I will sentence you to time served.  I will not be sentencing

2    you to further prison time.

3              Now, agreeing with that recommendation has meant

4    granting a very substantial downward variance from the range

5    recommended by the sentencing guidelines, which recommended a

6    minimum prison term of 24 months.  But joint sentencing

7    recommendations by the government and the defense are rare.

8    When I get them, and when they're built into a plea agreement,

9    as they are here, they warrant respect and a degree of

10   deference.  And, here, I find that the parties' joint

11   recommendation to be very wise.  I find the recommended

12   sentence easily compatible with the 3553(a) factors.  And here,

13   in brief, is my assessment of those factors:

14             The bottom line, Mr. Celli, is that but for certain

15   personal factors particular to you, and centered largely on

16   your mental health, the Section 3553(a) factors would have

17   pointed towards a prison term in this case measured in years as

18   opposed to months.  As context, just yesterday, a court in

19   another district imposed a 18-month prison sentence on a

20   defendant who had made death threats to a federal judge in

21   Washington, D.C.  But because of the circumstances specific to

22   you, and personal to you, a lower sentence, such as time

23   served, is sensible and reasonable here.

24             Under Section 3553(a), first of all, I need to

25   consider the seriousness of your crime and the need for just

37

L7KKCELS

1   punishment.  Your crime was very serious.  In November 2018,

2   you sent emails making death threats to two federal judges in

3   the Eastern District of New York, Margo Brodie and Brian Cogan.

4   The emails culminated a string of emails you had sent, and the

5   ones for which you're being prosecuted, which were sent on or

6   about November 12th, 2018, were blatant death threats.  And so

7   that nobody here is under any misimpression that the emails

8   were open to a different interpretation other than that, I'm

9   going to quote some of the language you used which you put in

10  capital letters.  And forgive me in advance for the profanity

11  that will, in part, ensue.

12        Quote:  "Katzmann and Stewdart, either you deal with

13  the U.S. Marshal threat from Brodie and Cogan or I hunt them

14  down and kill them.  Because they want to act like the Mafia,

15  they have to die like the Mafia.  Later, Katzmann and Stewdart,

16  if I hurt anyone, it is on you because you want to cover up

17  their criminal misconduct.  I promise that I kill them if you

18  don't address this crime against mother fuckers.  Katzmann and

19  Stewdart were keep fucking provoking me by not answering.  They

20  sent and carried out their threat, and now if the you deal with

21  them with it or I kill them."

22        The reason you sent those death threats was because

23  you disagreed with unfavorable rulings by Judges Brodie and

24  Cogan in civil lawsuits in which you were a party.  Judge Cogan

25  had denied motions by you to disqualify him, he dismissed your

38

L7KKCELS

1   third amended complaint with prejudice, and Judge Brodie had

2   sua sponte dismissed counterclaims you had filed as frivolous.

3       Your conduct in threatening the lives of these

4   conscientious professionals was despicable.  And under ordinary

5   circumstances, I've said, such conduct would require a sentence

6   in line with the guideline range from the perspective of just

7   punishment and making sure the sentence reflects the

8   seriousness of the crime.  This offense is gravely serious.

9   Ours is a country governed by the rule of law.  Our society

10  demands that decisions by government officials, whether by

11  judges or people in the executive branch, whether in the

12  federal government or the state and local government, be the

13  product of reasoning and principle.  Governmental decisions are

14  not supposed to be the product of threats or fear.  You have

15  doubtless heard for years the ancient expression that ours is

16  supposed to be a government of laws and not men; today, of men

17  and women.  That principle applies here.

18      Public officials like judges are charged with carrying

19  out their duties on the merits and conscientiously.  It's not

20  acceptable to try to influence public officials by threats of

21  personal harm or death.  That is not a proper way to influence

22  official conduct.

23      Citizens are at liberty to use lawful means to

24  persuade public officials on the merits, and there are many

25  lawful means to make your voice heard.  These include by

L7KKCELS

1    publicly filing legal briefs in a case that will be reviewed by

2    a judge or writing a congressperson or speaking at a rally

3    aimed at influencing the outcomes of the executive or

4    legislative branches.  But it's not acceptable or legal for a

5    person to try to get his or her way through death threats or

6    through the use of threats to punish or frighten officials for

7    making decisions with which a person disagrees.

8           Your conduct was particularly vile insofar as the

9    threats were made to judges.  Judges are neutrals.  They are

10    charged with applying the law neutrally, without fear or favor,

11    and letting the chips fall where they may based on where the

12    law and the facts point.  Threats of death to judges are aimed

13    at skewing results from what is just and right and/or punishing

14    judges for doing their jobs.  Threats like yours can instill

15    fear and alarm in judges and their families.  And for good

16    reason.  From time to time, a disappointed litigant has

17    violently retaliated against the judge in their case.

18    Fortunately, these situations are quite rare.  Although just

19    last summer, tragically, there was such a situation in which a

20    judge's son was killed and her husband gravely wounded by a

21    disappointed civil litigant.  If death threats to judges are

22    not met with a vigorous response at sentencing, these threats

23    may encourage copycats.  Worse, they may incite people to go

24    beyond words and seek to carry out death threats.  And if death

25    threats to our officials pass without significant punishment,

L7KKCELS

 1    if it's perceived to be open season on threatening judges, a

 2    host of bad consequences may follow.  It may be harder to

 3    attract good qualified people to take these important jobs, and

 4    public confidence that official decisions are the product of

 5    reason, and the law, and not of muscle and threats might ebb.

 6         For all these reasons, threats like yours are deadly

 7    serious, they cannot be tolerated.  And I say all that fully

 8    understanding that there is no evidence that you, Mr. Celli,

 9    had any intention to carry out these threats.  The point is

10    that your threats alone are a wrong of great gravity.

11         Under section 3553(a), a sentence also needs to be

12    consistent with the interests in general deterrence.  That

13    refers to the need for a sentence to get the message across to

14    other people who would commit such crimes, meaning sending

15    threats like yours and not to do that lest they face

16    significant punishment.

17         The interests in general deterrence would also require

18    a meaningful response in your case.  Offenses like yours tend

19    to receive a degree of publicity; even when they don't, if

20    threats to kill or maim public officials are, in general, not

21    met with substantial sentences, other angry litigants or

22    disappointed job seekers or people discontented with their

23    interactions with government might be tempted to follow your

24    lead and threaten office holders.  So the sentences imposed in

25    this case and similar cases taken as a whole need to be long

L7KKCELS

1    enough to make it clear to such a person that they would pay a

2    heavy price for any such misconduct.

3            Under Section 3553(a), I also have to consider the

4    interest in specific deterrence.  That refers to the need for

5    the sentence I impose to send a message to the specific

6    defendant before me — here, meaning you Mr. Celli — that would

7    be sufficient to deter him from committing future crimes.  That

8    interest is also present here.  It's true that other than a

9    vehicular offense you've never been charged with any crime

10   before this one, let alone any crime looking like this.  But

11   the death threat you made here culminated a series of

12   communications in which you expressed your rage and anger, and

13   the crime itself existed, as I showed earlier, of multiple

14   death threats.  Afterwards, during this court case, although

15   you have not issued any true threat, you've lost your temper on

16   multiple occasions, including, one could argue, in your written

17   submissions to the Court.  So, as a matter of specific

18   deterrence, it's important that you emerge from this

19   prosecution, including from the sentence that's imposed,

20   appreciating that you cannot threaten judges or other public

21   officials, and that if you do so, you'll face more severe

22   consequences.

23           Finally, under Section 3553(a), I am to consider the

24   interests in public protection or incapacitation.  That refers

25   to the benefit the free public gets from your being in federal

42

L7KKCELS

1    prison, where, by definition, you can't commit crimes that

2    endanger them.  There is an interest in that here.  To the

3    extent that you haven't already been deterred from making a new

4    round of threats, there's a public interest in conditions being

5    imposed on you that impede you from doing so again.

6    Ordinarily, when think of that incapacitation, we think

7    about putting a defendant behind bars, where, by definition, he

8    can't harm the public again.  In your case, though, there

9    are conditions of supervised release, such as those that the

10   parties have proposed, that I'm prepared to accept, that I

11   believe will afford a good degree of protection.

12            So far, I have considered factors, Mr. Celli, that, by

13   their nature, tend to favor a substantial sentence, but, as I

14   said, there are factors particular to you that counsel in favor

15   of a below-guideline sentence, and I am going to review them

16   with you now.

17            First of all, and this is very important, as

18   Mr. Silverman has pointed out, there is no evidence at all that

19   you have ever physically hurt anyone or tried in the slightest

20   to do so.  You have never ever physically approached a judge,

21   you haven't stalked or loitered outside a courtroom, there's no

22   evidence that you ever sought to arm yourself.  Your crime here

23   is limited to threats; that is important context.

24            Second, you accepted responsibility.  You did so by

25   pleading guilty and admitting your crime in open court in this

43

L7KKCELS

1    courtroom.  That makes a difference to me, as it does under the

2    sentencing guidelines.  It was a very good decision.  Please

3    know that were it not for your guilty plea, the sentence I

4    impose today assuredly would have been higher.

5         Third, since your arrest in November 2018, although

6    you have violated bail conditions and conditions of pretrial

7    release, and although you have been intemperate on multiple

8    occasions, you have not crossed the line into making threats.

9    That is important context, too.  You appear, in your own way,

10   to have a grasp of what the bright lines are, and you have

11   managed to avoid them.

12        Fourth, under Section 3553(a), I am to consider a

13   defendant's history and characteristics, and, at this point,

14   I'm referring to your history and character other than your

15   criminal history, which I've already covered.  In your case, an

16   aspect of your history that deserves huge weight in assessing

17   the just sentence are the mental health challenges you face.

18   There's no need to dwell on the details.  Suffice it to say

19   that I found Mr. Silverman's analysis in the sentencing memo

20   and Dr. Goldsmith's assessment in the psychiatric report and

21   Dr. Rosenfeld's earlier assessment from 2020 in his

22   psychological evaluation all to be very perceptive and

23   persuasive.

24        It has been amply documented to my satisfaction,

25   indead it has been established conclusively, that you have a

L7KKCELS

1    personality dis      r condition, and a significant one at that.

2    It's also been       y documented that that condition causes you

3    to perceive reality in a distorted way.

4            It's also clear that that tendency to misperceive

5    reality lies at the heart of the angry, but short-lived

6    outbursts that have characterized your behavior in this case.

7    And by that, I mean not only the threats on which the

8    indictment is based, but also your occasional outbursts in

9    court.  Heaven knows, I have seen time and again your tendency

10   to adopt a dist    ed view of reality, one in which you view

11   people who are            doing their jobs as antagonists of yours.

12   That has been o    splay in court, it has been on display in

13   your written su      sions, including your most recent one.

14           To be clear, I do not believe that you lack all

15   abilities to cont ol yourself at these moments.  You can

16   control yourself, and you have shown that.  Indeed, with a

17   benefit of the treatment you've been receiving, you have shown

18   clear signs of heeding boundaries better than before.  But

19   bottom line, it is quite apparent to me that you suffer from a

20   significant mental health condition that made this offense far

21   more likely to         ir in your case than in that of a person

22   without that cor     ion, and for multiple reasons, that

23   justifies a red      sentence relative to an offender who

24   committed the s      acts, but without such a condition.  As a

25   matter of just punishment and making sure that the sentence

45

L7KKCELS

1    reflects the extent of the defendant's moral blameworthiness,

2    it's mitigating, truly mitigating, that the threats you fired

3    off by email in November 2018 were made more likely to happen

4    by your condition. Your capacity for self-restraint was less

5    than that of other people. From the perspective of specific

6    deterrence and protection of the public, the fact that your

7    mental health challenges are a root cause of your crime

8    suggests a treatment more than incarceration is the key to

9    assuring that threats like the ones you made to Judges Brodie

10   and Cogan never happen again.

11        The supervised release term that I will impose, and

12   which will take effect immediately, will have stringent

13   conditions. These will include conditions that you continue to

14   receive mental health and substance abuse treatment. The

15   latter is necessary because of a cocaine issue that appears to

16   have been triggered, in part, by your mental health problems,

17   and perhaps also by some of the traumas you have regrettably

18   experienced in your life. As negotiated in the plea agreement,

19   I will also impose as conditions a series of limitations on

20   your conduct, including communicating with courts, which should

21   serve to protect the public. Should you violate a term of

22   supervised release, including any of these terms, it is likely

23   — no commitments here, but it is likely — and you should expect

24   that you will go to prison. Awareness of that significant

25   possibility should help make sure that you do not lapse.

L7KKCELS

1       I note, as well, that this sentence is not without a

2   prison term.  You served four and a half months in prison,

3   including during a dreadful period in the MDC when a power

4   outage caused inmates to live in frigid conditions.  I know

5   that those four and a half months were hard, and I would

6   otherwise say searing experience but for the frigidity, it got

7   your whole attention and which you do not wish to repeat.

8       From the perspective of general deterrence, in my

9   judgment, a person contemplating threatening public officials

10  who knew that you went to prison, and the conditions you went

11  to prison for four and a half months for such conduct, would

12  absolutely think twice before committing such an offense.  I,

13  therefore, think that the jointly agreed upon prison sentence

14  is consistent with the 3553(a) factors.

15      Mr. Celli, now something personal:  Before I impose

16  sentence, I want to say a few words to you personally.  Look,

17  the conduct you engaged in, the death threats to the judges,

18  was appalling and wrong and inexcusable.  They were, as I said

19  earlier, despicable.  It was necessary and important that you

20  be prosecuted.  I think you know that what you did was wrong,

21  and you have paid a price for what you did, but I am aware,

22  well aware, that there is more to your life and your journey

23  than the crime that you have committed, and in deciding whether

24  to accept the parties' joint proposed sentence, I have

25  considered the letters and other materials that shed light on

47

L7KKCELS

1   other aspects of your journey.  And I'm referring now to

2   letters like those from Harriet Ritter Wiggs, your former

3   colleague in the New York City Department of Education, from

4   your mother, Fernanda Celli — and thank you for being here

5   today — from your brother, Gino Celli — is Gino Celli here?

6   Thank you for being here — from your sister-in-law, Maritza

7   Celli — is she here?

8              THE DEFENDANT:  No.

9              THE COURT:  Okay.

10             -- from your friend, Rafael Martinez, from your

11  cousins, Fran Garcia and Luisa Isernia, and from your work

12  colleague, Cynthia Welker.

13             And I will ask you, Mr. Silverman, please extend, to

14  the extent the letter-writers are not here, my great thanks for

15  all of those people for taking the time to write.

16             These good people, Mr. Celli, believe in you.  You are

17  described in the letters as a dedicated and energetic and

18  respected teacher who cares deeply about students.  That

19  portrait really resonated with me in particular because I am

20  the child of such a teacher.  My late mother taught in the New

21  York City Board of Education from 1969 to 1990.  I know how

22  hard and important that job is and what it takes for a teacher

23  to earn the plaudits that you have justifiably received.  The

24  letters also describe you as a mentor and a person of passion

25  and positivity who has been a source of support to friends and

48

L7KKCELS

1  family, including during hard times, as a friend and family

2  member who, in those contexts, exhibits unconditional love and

3  gentleness, and as a person who struggles in recent years have

4  caused them sorrow and concern. Your friends and your family

5  are optimistic you are in the process of turning the corner.

6  So am I.

7  These are impressive testimonials. I have considered

8  them in your favor today. They describe a person capable of

9  much kindness and with much good to offer. It's my hope that

10  as you continue to receive therapy and treatment, the person

11  whom your friends and family describe will increasingly be the

12  person whom the rest of the world gets to see.

13  I'm now going to formally state the sentence I intend

14  to impose. The attorneys will have a final opportunity to make

15  legal objections before the sentence is finally imposed.

16  Mr. Celis, would you please rise.

17  After assessing the particular facts of this case and

18  the factors under section 3553(a), including the sentencing

19  guidelines, it is the judgment of the Court that you are to

20  serve a sentence of time served in the custody of the Bureau of

21  Prisons, to be followed by a period of two years' supervised

22  release.

23  As to supervised release, the standard conditions of

24  supervised release shall apply. In addition, you shall be

25  subject to the following mandatory conditions:

49

L7KKCELS

1    You shall not commit another federal, state, or local
2    crime;
3    You shall not illegally possess a controlled
4    substance;
5    You shall not possess a firearm or destructive device;
6    You must cooperate in the collection of DNA, as
7    directed by the probation department.
8    You must also meet the following special conditions,
9    and I am here incorporating verbatim by reference the
10   conditions set out in Court Exhibit A, with the minor line
11   edits that I reviewed with counsel earlier.  And to spare
12   everybody a lot of reading, I will just note that the first
13   series of these impose limits on, among other things, your
14   contact with court personnel, judges, court filings, and so
15   forth, and they set parameters with respect to the
16   circumstances under which any filing could be made by you.
17   There is also a requirement of your participation in
18   outpatient mental health treatment.
19   There's a requirement of your participating in a
20   30-day inpatient substance abuse program.
21   There are limitations on your access to the internet.
22   You are to participate and cooperate with the probation
23   department's computer and internet monitoring program.
24   On request, you're to cooperate with the probation
25   department in setting access to your financial records.

L7KKCELS

1        You ar      report to the probation department any

2    electronic communication accounts.

3        You shall notify the Department of Education of your

4    conviction.

5        And, finally, you are to submit your person, property,

6    house, car, devices, and the like to a search conducted by the

7    probation department on reasonable suspicion that a violation

8    of law or of supervised release is occurring or has occurred.

9        Here's why I'm imposing that last condition:  Given

10   the fact that even under pretrial supervision, you've had

11   lapses and you have breached, as reflected in today's memo, the

12   condition under which you weren't supposed to be reaching out,

13   it is possible, although I hope it won't happen, that you will

14   be tempted to breach the conditions of supervised release that

15   I've imposed.  I want you to know that the probation department

16   has maximal authority to have its eyes on you.  If you know

17   that, if you know that they will be able to gain access to your

18   devices, your home, maybe that will hold that impulse in check,

19   maybe knowing that the probation department will be able to

20   discover those things will cause you to think twice, and, for

21   that reason, I think it's a wise and enlightened condition.

22   It's one that the probation department proposed.

23       I do not want to tell you, Mr. Celli, that I take

24   supervised release very seriously.  It's the heart of the

25   rehabilitative part of the sentence.  You've had some missteps

L7KKCELS

1  recently in con... ion with your pretrial supervision, as

2  reflected in th    ly 5th incident and the incident that was

3  the subject of today's memo.  The alleged DWI incident will be

4  handled by state  r local authorities.  I do not express any

5  views as to how they should respond to that incident if the

6  allegation there were to be established.  I'm choosing not to

7  deviate from the parties' joint sentencing submission and

8  recommendation based on that incident, but as of now, you are

9  on supervised re ease.  If in the event of a violation of

10 supervised relea   occurs, that would be on my watch, and that

11 means any violat    from today forward of any of the conditions

12 that I've set c    if that were to happen, you should expect a

13 firm response a    eaningful punishment.  You need to turn

14 square corners.  You need to fully comply with the law and the

15 terms of supervis d release.

16          As a result of the plea agreement that you were able

17 to enter into, for which much credit goes to Mr. Silverman, and

18 much credit, as well, goes to the government for its

19 enlightened flexibilities here, you have received leniency

20 today, Mr. Celli  that might not have occurred under other

21 circumstances.      you squander the opportunity that today's

22 sentence of time   rved represents, if you violate the terms of

23 release, you can    expect similar leniency again.

24          All ri    Continuing with the sentence:  I'm going

25 to order you to pay a fine of $1,000.  I think that is a useful

L7KKCELS

1 contributor to the punishment in this case.

2    I'm not imposing restitution or forfeiture.  Neither

3 is appropriate or being sought.

4    I am imposing a mandatory special assessment of $100,

5 which shall be due immediately.

6    Beginning with the government, does either counsel

7 know of any legal reason why the sentence shall not be imposed

8 as so stated?

9    MS. KARMIGIOS:  No, your Honor.

10    MR. SILVERMAN:  No, your Honor.

11    THE COURT:  Sentence as stated is imposed.

12    Ms. Karmigios, I don't think so, but are there any

13 open counts?

14    MS. KARMIGIOS:  No, your Honor.

15    THE COURT:  All right.

16    Mr. Celli, to the extent you haven't given up your

17 right to appeal your conviction and your sentence as a result

18 of your plea of guilty and the plea agreement that you entered

19 into with the government, you have the right to appeal your

20 conviction and your sentence.  If you're unable to pay for the

21 costs of an appeal, you may for apply for leave to appeal

22 in forma pauperis.  The notice of appeal must be filed within

23 14 days of the judgment of conviction.

24    Mr. Smallman reminds me that I need to set a due date

25 on the fine.  Mr. Silverman, any reason why a week from now

53

L7KKCELS

1    can't be accomp    ed?  Two weeks from now?

2              MR. SILVERMAN:  No, your Honor.

3              THE COUR :  We will make it two weeks from now, the

4    fine is due, just to play it safe.

5              MR. SILVERMAN:  Thank you, your Honor.

6              THE COURT:  Mr. Silverman, I assume you will take

7    ownership of the process of making sure it gets paid by

8    Mr. Celli?

9              MR. SI   RMAN:  Yes, your Honor.

10             THE COU     All right.  Thank you.

11             Is the    nything further from the government?

12             MS. KA    IOS:  Not from the government.

13             THE COURT:  Anything further from the defense?

14             MR. SILV RMAN:  No, your Honor.

15             THE COURT:  All right.

16             Before we adjourn, Mr. Celli, I just want to wish you

17   the very best.  I have deep respect for the hard road that

18   you've traveled in your life, I have a lot of empathy for you,

19   and I was really quite impressed by what I read about you, as I

20   hope you picked    earlier.  Let the words of your family

21   members be the s    chlight here, let that guide you going

22   forwards.  It's    ious that you're a capable of a lot of good

23   and that you've    complished a lot of good in your life, and,

24   hopefully, that will inspire you going forward.

25             To the f iends and family of Mr. Celli, thank you for

54

L7KKCELS

1   participating both through the letters and for being here

2   today.  That registered with me, it made a difference to me.

3   It's encouraging to me to see that Mr. Celli has such good

4   people in his corner who think so well of him, and I hope and

5   expect that you will be by his side during this next phase, as

6   he rebuilds a life moving forward now that we've had sentencing

7   in the case.

8           Before I adjourn, I would also just invite counsel —

9   without the court reporter and without defendant, just

10  counsel — to come to my robing room, so I can say a private

11  word of thank you.

12          Thank you.  We stand adjourned.

13          MR. SILVERMAN:  Thank you, your Honor.

14                        *  *  *

15

16

17

18

19

20

21

22

23

24

25

Dear Justice Roberts, Judge Livingston, Clerk Wolfe, AG Merrick (sp), AUSA Amudnson, Judge Engelmayer, Senate Judicial Committee, Office of Oversight and Administration and Mr. Mysliwiec:

Re: criminal complaint against Clerk Wolfe switched transcript of July 20, 2021 with the transcript of March 15, 2022.

I write the government to inform them, as I did to Judge Weir/Judge Engelmayer/so on, about the fact that Perez and the AUSAs for ED knew that Judge Engelmayer explained and read the special conditions.

1-the transcript is not available on 19cr127, which Mysliwiec was told about and asked to obtain

Please Take Notice, my brother mailed the transcripts

2-Betsy played me audio of where Randi Weingarten, Judge Marrero, Betsy and Clerk Wolfe were presence

3- Randi told Wolfe to do (not provide the panel of judge all documents) and if needed a judgement in the panel's name

4-Wolfe answered with "I'll do whatever you whatever you want, like before"

5- No AUSA believes that the panel of judges wrote Judge Cogan is allowed to practice law for his former clients."

If the panel in 22-3138 or the 2d Cir did a real review of the record-- as I know what is on the dockets--- the allegation about the transcripts being switched DOES APPEAR

Judge Engelmayer ...you obstructed justice by not allowing me to create a record and my lawyers knowingly committee crimes for the UFT and Randi Weingarten

At the center is Vinny's penis picture and UFT's and Randi's retaliation about the penis ... Randi is the ONLY union person to answer m... and the DOE ADMITTED to retaliation with the Bensing/Karamigios knowing---missing from the record !!!!!!!!!

Tsk, Tsk, Tsk ...people want to know if Randi knows the taste of Schumer's shit because Randi is like a sister to him....yes, she is a lebisar but her tongue is always up his ass

Remedy

I was denied a fair trial and a fair appeal with Clerk Wolfe committing numerous crimes of obstruction and violating my constitutional rights--crime under 18 USC sec. 371 and 18 USC sec. 241

A trial based on facts

USA v. Lucio Celli 19cr127

Celli v. Celli

22-3138

Dear Chief Justice Roberts, Chief Judge Livingston, Panel of Judges, Judge Engelmayer, Mr. Mysliwiec, and AUSA Amundson

Re: 40 missing motions with the panel of judges obstructing justice to cover up Weingarten's and Cogan's criminal conduct and the numerous motions unanswered that helped Weingarten with UFT retaliate against me--which appears Engelmayer as the person under the "Cat's Pawn Theory" for Weingarten b/c she was the only person who answered me about the penis picture

I write Your Honors about the 40 missing motions and to ask Judge Engelmayer to review how his order helped Randi with her criminal interference with my civil rights with probation, the AUSAs in my case and my lawyers, which Mr. Mysliwiec redacted for the public because he committed crimes under 18 USC sec. 1519

1- The panel of judge could have not considered ALL 40 motions because there were just a few and the rest are still not public

2- Judge Marrero said that if he ignored facts with law for Randi, then it would be a crime--found such cases under RICO and 18 USC sec 371 and I want to say another section

Please Take Notice, the panel judge--based on one of the motion available on the docket....the fact is Silverman was not my lawyer and the fact I cited the law of "structural error" for choice of lawyer

3-Judge Engelmayer may have forgotten when I asked him about the missing motions, but Wier, Bloom, him and others received it and USA Karamigios knew about them

4-It appears Judge Engelmayer he' ed Randi and Cogan interfered and deprive me of all rights, as 80 AUSAs said crimes were committed and I was not allowed to create a record

5- AUSA Shaw said it was a crime for Silverman, so how could the panel ignore it

6- Randi told Clerk Wolfe that she was to enter a decision because Randi did not want any appeals judges reviewing the Judge Marrero's decision--IN CASE someone to look back

Remedy:

1- New trial or remedies for loosing my job w/o showing Randi's and Cogan's criminal involvement with AUSAs helping to show that I was not able to defend myself, have the AUSAs provide me with the evidence to recoup over 200k wages from Cogan's illegal conduct, place me back on payroll with a new 3020a b/c Engelmayer's order caused w/ hm saying that he had to ensure that I defend myself, the illegal detentions due to Randi's and Cogan's interference--Mysliwiec knows that the AUSA suborned perjury and of his criminal conduct of enforcing Engelmayer's order, and the retro wages

2- Ensure that PERB following its own rules because Engelmayer's enforcing his order or the UFT processing my grievance would ensure procedural due process

According to Mr. Mysliwiec, how ver, the 2d Cir, EDNY and SDNY will retaliate against me and not enforce Engelmayer's order and  inue to help the UFT and the Randi in their retaliation b/c I exercised my right by informin  lg s of the criminal conduct of Wolfe, my lawyers, the AUSAs and what appears--even Engelmaye  t 1 I could be wrong--when he doesn't answer or denies --I will be right)

LUCIO Celli
89 Widmer Rd
Wappinger Falls, NY 12590



9589 0710 5270 2076 8942 90

Retail





10007

RDC 99

U.S. POST
FCM LG EN
WAPPINGE
NY 12590
JUL 23, 202
$9.16
S2324M504

Second Circut of Appeals
40 Foley Square
New York, NY 10007

